IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| D. STEWART ARMSTRONG, et. al.,<br><br>Plaintiff(s),<br>v.<br><br>CHEVY CHASE BANK, FSB., et. al.,<br><br>Defendant(s). | CASE NO. 5:11-cv-05664 EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Docket Item No(s). 32] |

In this action challenging foreclosure proceedings, Defendants Chevy Chase Bank, FSB ("Chevy Case") and Capital One, N.A. ("Capital One")[1] move the court for order dismissing the First Amended Complaint ("FAC") filed by Plaintiffs D. Stewart Armstrong and Cindy Ikeoka (collectively, "Plaintiffs"). See Docket Item No. 32. Plaintiffs filed written opposition to the motion. See Docket Item No. 36.

The court has carefully reviewed this matter and, for the reasons explained below, the motion to dismiss will be granted.

### I. FACTUAL BACKGROUND

On or about June 24, 2004, Ikeoka executed a Note and Deed of Trust for $1,470,000 in favor of Chevy Chase in order to purchase real property located in Carmel, California. See FAC,

---

[1] The third defendant to this action, U.S. Bank, N.A. ("U.S. Bank"), did not join in this motion to dismiss and is currently in default. See Docket Item No. 44. The court refers to all three defendants collectively as "Defendants" in this Order.

1
CASE NO. 5:11-cv-05664 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Docket Item No. 23, at ¶ 1, Ex. L; see also Defs.' Request for Judicial Notice ("RJN"), Docket Item No. 33, at Ex. 1.[2] In addition to being the lender, Chevy Chase was also named as the trustee on the Deed of Trust. Id. Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the nominee of the lender and the beneficiary. Id.

After presumably paying on the Note for nearly four years, Plaintiffs began to experience financial hardship sometime in 2008 and could not maintain their loan payments.[3] See FAC, at ¶ 24. They contacted Chevy Chase and were informed by Leonard Watkins that they would be offered a loan modification if they could bring their loan payments current. Id. at ¶ 25. Plaintiffs then paid Chevy Chase $13,500 in a lump sum payment to cure the default, but were offered a forbearance plan instead of a modification. Id.

On May 20, 2009, T.D. Service Company recorded Notice of Default indicating that Plaintiffs owed $76,091.71 as of May 26, 2009. Id. at Ex. C. On June 29, 2009, MERS recorded a Substitution of Trustee which substituted T.D. Service Company for Chevy Chase. See RJN, at Ex. 2. A Notice of Trustee's Sale based on the Notice of Default was also recorded on November 19, 2009, but was ultimately rescinded. See FAC, at Exs. D, F.

On March 26, 2010, MERS assigned the Deed of Trust to "US Bank, NA as trustee for CCB Libor Series 2005-1 Trust." See FAC, at E; see also RJN, at Ex. 3. This assignment was corrected on July 8, 2011, to account for the correct name of the assignee as "U.S. Bank N.A. as trustee relating to the Chevy Chase Funding LLC Mortgage Backed Certificates, Series 2005-1." See FAC, at Ex. G; see also RJN, at Ex. 4.

On August 2, 2011, Capitol One recorded a Substitution of Trustee on behalf of U.S. Bank as the beneficiary, this time substituting Quality Loan Service Corporation ("Quality") as trustee. See FAC, at Ex. H; see also RJN, at Ex. 5. Quality then recorded a Notice of Default that same day

---

[2] Defendants' RJN is GRANTED in its entirety. Fed. R. Evid. 201(b)(2); Hite v. Wachovia Mortg., No. 2:09-cv-02884-GEB-GGH, 2010 U.S. Dist. LEXIS 57732, at *6-9 (E.D. Cal. June 10, 2010); Gens v. Wachovia Mortg. Corp., No. CV10-01073 JF (HRL), 2010 U.S. Dist. LEXIS 54932, at *6-7, 2010 WL 1924777 (N.D. Cal. May 12, 2010).

[3] The FAC does not clarify Plaintiffs Armstrong's involvement in the loan transaction or establish his standing to pursue all or any of the causes of action asserted against Defendants, outside of identifying Armstrong as an owner of the real property at issue. See FAC, at ¶ 6.

2
CASE NO. 5:11-cv-05664 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

noting that Plaintiffs' owed $336,704.11 as of July 28, 2011. See FAC, at Ex. I; see also RJN, at Ex. 6. A Notice of Trustee's sale was thereafter recorded on November 7, 2011. See FAC, at Ex. J; see also RJN, at Ex. 7.

Plaintiffs initiated this case on November 23, 2011. This instant motion to dismiss followed.

## II. DISCUSSION

The FAC contains ten causes of action, only five of which are asserted against Chevy Chase and Capital One. These are addressed in turn below.

### A. Declaratory Relief

Plaintiffs base the first cause of action for declaratory relief under 28 U.S.C. §§ 2201 and 2202 on the allegation that "any purported transfer and/or assignment to the Chevy Chase Trust res was invalid and is a legal nullity." See FAC, at ¶ 67. Apparently, Plaintiff allege that their mortgage "was not property assigned to the Chevy Chase Trust before the required 'Closing Date,' as set forth in the [Pooling and Servicing] Agreement [(the 'PSA')]." Id. at ¶ 32. Based on this alleged deficiency, Plaintiff's believe that "U.S. Bank does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured." Id. at ¶ 67.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et. seq.*, allows the district court to "declare the rights and other legal relations of any interested party seeking such a declaration . . . ." 28 U.S.C. § 2201(a). However, such relief is limited by the express terms of the statute to cases "of actual controversy." Id. As a result, the finding that an actual controversy actually exists is an essential prerequisite for an claims under the DJA. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).

Here, Plaintiffs theory of liability fails to support a plausible claim because Plaintiffs lack standing to allege a breach of the PSA. Indeed, they are neither direct parties to nor third-party beneficiaries of that agreement. See Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 944 ("A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. . . . As to any provision made not for his benefit but for the benefit of the contracting

parties or for other third parties, he becomes an intermeddler." (internal citations omitted)).

Accordingly, this court must conclude - as many other courts have previously - that Plaintiffs cannot plead an actual controversy in the absence of standing to enforce the PSA. See, e.g., Hale v. World Sav. Bank, No. CIV 2:12-cv-1462-GEB-JFM (PS), 2012 U.S. Dist. LEXIS 141917, at *17-18 (E.D. Cal. Oct. 1, 2012) ("[T]o the extent plaintiffs base their claims on the theory that defendants allegedly failed to comply with the terms of the PSA, the court notes that they lack standing to do so because they are neither a party to, nor a third party beneficiary of, that agreement."); Junger v. Bank of America, No. CV 11-10419 CAS (VBKx), 2012 U.S. Dist. LEXIS 23917, at *7, 2012 WL 603262 (C.D. Cal. Feb. 24, 2012) ("The Court finds that plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized because he is not a party to the PSA."); Tilley v. Ampro Mortg., No. S-11-1134 KJM CKD, 2012 U.S. Dist. LEXIS 1935, at *11, 2012 WL 33033 (E.D. Cal. Jan. 6, 2012); Bascos v. Fed. Home Loan Mortg. Corp., No. CV 11-3968-JFW (JCx), 2011 U.S. Dist. LEXIS 86248, at *18-19, 2011 WL 3157063 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); Deernick v. Heritage Plaza Mortg. Inc., No. 2:11-cv-01735-MCE-EFB, 2012 U.S. Dist. LEXIS 45728, at *14-16 (E.D. Cal. Mar. 30, 2012); Bernardi v. JPmorgan Chase Bank, N.A., No. 5:11-cv-04212 EJD, 2012 U.S. Dist. LEXIS 85666, at *5-8, 2012 WL 2343679 (N.D. Cal. June 20, 2012).

In any event, Plaintiffs have not supplied sufficient factual information to support their theory of flawed securitization. As noted, Plaintiffs rely on Defendants' alleged failed to observe a "Closing Date" in the Trust Agreement by which all mortgages must be transferred to the Chevy Chase Trust. But despite this allegation, Plaintiffs fail to identify any such "Closing Date." Moreover, documents attached to the FAC and subject to judicial notice appear to establish a proper chain of assignment after the first Notice of Default was rescinded. See FAC, at Exs. F-J; see also RJN, at Exs. 4-7.

Accordingly, the cause of action for declaratory relief will be dismissed. Since the problem with standing is seemingly insurmountable, the dismissal will be without leave to amend as allowing

4
CASE NO. 5:11-cv-05664 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

for further amendment would be futile. Miller v. Rykoff-Sexton, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient.").

### B. Negligence

Plaintiffs' cause of action for negligence alleges that Chevy Chase, Capital One and U.S. Bank entered into an "unconventional relationship" with Plaintiffs through the loan modification process. See FAC, at ¶ 76. They claim that Defendants owe Plaintiffs a duty to exercise reasonable care and skill to follow California law, which they believe includes "engaging borrowers to enter into a trial loan modification plan." Id. at ¶ 77. According to Plaintiffs, Defendants breached this duty when they "misrepresented to Plaintiffs they were entering into a trial loan modification plan when in fact they were only offering Plaintiffs a forbearance plan." Id. at ¶ 78.

This cause of action fails for two primary reasons. First, this cause of action is subject to a heightened pleading standard because it sounds in fraud or misrepresentation. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, there must be "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007); see also Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1164 (E.D. Cal. 2009). In other words, these causes of action must generally contain more specific facts than is necessary to support other causes of action.

Here, Plaintiffs only allege that Leonard Watkins, an employee of Chevy Chase, "held out to Plaintiffs that they would be offered a loan modification if their loan was brought current." See FAC, at ¶ 25. There is no account of when Watkins made this misrepresentation, other than it occurred sometime in 2008, nor is the specific content of Watkins' misrepresentation included in the FAC. It therefore falls short of the Rule 9 pleading standard.

Second, Plaintiffs have not alleged facts that support a duty of care. In order to sufficiently state a claim for negligence, a plaintiff must demonstrate: (1) that the defendant owed a legal duty to

the plaintiff; (2) that the defendant breached that duty; and (3) that the breach was the proximate and actual cause of the plaintiff's injury. Sohal v. Fed. Home Loan Mortg. Corp., No. 11-01941, 2011 U.S. Dist. LEXIS 97355, at *24, 2011 WL 3842195 (N.D. Cal. Aug. 30, 2011); Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913 (1996).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991); see also Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994).

By alleging that the purported initiation of the loan modification process created an "unconventional relationship," Plaintiffs rely on one exception to this general presumption against a duty of care between the lender and the borrower. "Special circumstances arise when the lender 'actively participates in the financed enterprise beyond the domain of the usual money lender.'" Sipe v. Countrywide Bank, 690 F. Supp. 2d 1141, 1153 (E.D. Cal. 2010) (quoting Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980)).

The problem with this argument is that a loan modification, which at its core is an attempt by a money lender to salvage a troubled loan, is nothing more than a renegotiation of loan terms. This renegotiation is the same activity that occurred when the loan was first originated; the only difference being that the loan is already in existence. Outside of actually lending money, it is undebatable that negotiating the terms of the lending relationship is one of the key functions of a money lender. For this reason, "[n]umerous cases have characterized a loan modification as a traditional money lending activity." See Settle v. World Sav. Bank, F.S.B., No. ED CV 11-00800 MMM, 2012 U.S. Dist. LEXIS 4215, at *24, 2012 WL 1026103 (C.D. Cal. Jan. 11, 2012); see also Johnston v. Ally Fin. Inc., No. 11-CV-0998-H BLM, 2011 U.S. Dist. LEXIS 83298, at *10, 2011 WL 3241850 (S.D. Cal. July 29, 2011) ("In addition, loan modification is an activity that is intimately tied to Defendant's lending role." (internal quotations omitted)). The minority of cases which hold otherwise, such as Ansanelli v. JP Morgan Chase Bank, N.A., C 10-03892 WHA, 2011 U.S. Dist. LEXIS 32350, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011), are unpersuasive.

The legal lack of duty does not end the matter, however, since Plaintiffs' alleged facts do not

support their theory, even if initiation of the loan modification process did create a duty of care. Here, Plaintiffs have merely indicated that they would be *offered* a loan modification if they brought the loan current - not that the process actually began. In fact, Plaintiff discovered later that only forbearance, not modification, was the option offered. As such, Plaintiffs have not identified any "special circumstances" consistent with their interpretation of the law.

Since Plaintiff's have neither alleged a plausible theory of negligence nor supported this theory with sufficient facts, the court will dismiss this cause of action without leave to amend since allowing for amendment would be futile.

### C. Quasi-Contract

In this cause of action for quasi-contract, Plaintiffs allege that U.S. Bank and Capital One were unjustly enriched by accepting mortgage payments from Plaintiff even though they had no interest in Plaintiffs' Deed of Trust. See FAC, at ¶ 82. Defendants argue Plaintiffs failed to state a claim for quasi-contract. The court agrees.

As an initial matter, the court notes that a claim for quasi-contract is synonymous with one for unjust enrichment. FDIC v. Dintino, 167 Cal. App. 4th 333, 346 (2008). Classified as such, quasi-contract "is not an independent cause of action under California law." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1193 (C.D. Cal. 2010). Plaintiffs' claim is therefore subject dismissal for this reason alone.

But assuming Plaintiffs can maintain this equitable claim as a stand-alone cause of action, they nonetheless failed provide sufficient facts to support it. "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008) (quoting Lectrodryer v. SeoulBank (2000) 77 Cal. App. 4th 723, 726 (2000)). Here, Plaintiffs rely on the same underlying allegation that U.S. Bank and Capital One never acquired an interest in the Deed of Trust due to a failure to comply with the terms of the PSA. But as already pointed out, Plaintiffs do not have standing to allege a violation of the PSA. Moreover, the allegations against an ability to foreclose is directly contradicted by documents subject to judicial notice and attached to the FAC. It is further worth noting the absence of any allegations suggesting that the monthly payments made to Capital

7

One as the loan servicer were retained without being credited to the mortgage account.

Plaintiffs also contend that their obligation to pay Chevy Chase pursuant to the Deed of Trust was satisfied when it was reassigned as part of the securitization process. That allegation is meritless. Indeed, "'[t]here is no legal authority that the sale or pooling of investment interests in an underlying note can relieve borrowers of their mortgage obligation or extinguish a secured party's rights to foreclose on secured property.'" Taylor v. CitiMortgage, Inc., No. 2:10-CV-505 TS, 2010 U.S. Dist. LEXIS 119808, at *9, 2010 WL 4683881 (D. Utah Nov. 10, 2011) (quoting Upperman v. Deutsche Bank Nat'l Trust Co., No. 01:10-cv-149, 2010 U.S. Dist. LEXIS 38827, at *5, 2010 WL 1610414 (E.D. Va. Apr. 16, 2010)); see also Rosas v. Carnegie Mortg. LLC, CV 11-7692 CAS (CWx), 2012 U.S. Dist. LEXIS 71262, at *27, 2012 WL 1865480 (C.D. Cal. May 21, 2012); see also Rodenhurst v. Bank of Am., 773 F. Supp. 2d 886, 899 (D. Haw. 2011).

Since the court finds that amendment of this cause of action would be futile, it will be dismissed without leave to amend.

### D. Unfair Competition Law ("UCL")

Under the UCL, there are three varieties of unfair competition: "acts or practices which are unlawful, or unfair, or fraudulent." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 618-19 (1993). "Unlawful" practices are "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838 (1999). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). The "fraudulent" prong under the UCL requires a showing of actual or potential deception to some members of the public, or harm to the public interest. See id. at 180; see also Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995). The UCL 'borrows' violations of other laws and treats them as unfair business practices, and also "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." Cel-Tech, 20 Cal. 4th at 180.

With regard to Capital One and Chevy Chase, all of Plaintiffs' UCL allegations are either

conclusory (see FAC, at ¶¶ 125, 129, 136-142) or rely on the same flawed securitization theory already rejected by the court. See FAC, at ¶ 124 ("Capital One violated Cal. Penal Code § 532(f)(a)(4) by filing or causing the Assignment and Substitution to be filed with the Monterey County Recorder's Office . . . with knowledge that the Assignment and Substitution contained a deliberate misstatement and misrepresentation . . . ."); ¶ 126 ("Capital One demanded and accepted payments for debts that were non-existent."); ¶ 127 ("Capital Once reported payments as late to credit bureaus without the legal right or authority to do so."); ¶ 130 ("Capital One, as Plaintiff's mortgage servicer, has been acting in a manner to mislead Plaintiffs into believing that U.S. Bank and/or Capital One had the authority to demand payments from them."). These allegations cannot, therefore, support this cause of action.

In addition, the only specific statute referenced as to Capital One - California Penal Code § 532(f)(a)(4) - does not exist.

For much the same reason as those already discussed, the UCL cause of action is dismissed without leave to amend insofar as it is asserted against Capital One and Chevy Chase.

**E.     Accounting**

Plaintiffs' seventh cause of action seeks an accounting for payments made by them to U.S. Bank and Capitol One. "A claim for accounting survives a motion to dismiss only if (1) the relationship between a plaintiff and defendant, such as a fiduciary relationship, calls for an accounting, and (2) the defendant owes a balance to the plaintiff that is too complicated to calculate without an accounting from the Court." Ford v. Lehman Bros. Bank, FSB, No. C 12-00842 CRB, 2012 U.S. Dist. LEXIS 85600, at *45, 2012 WL 2343898 (N.D. Cal. June 20, 2012). "An accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009).

Here, Plaintiffs cannot demonstrate the requisite need for a judicial accounting. To the extent the amount Plaintiffs paid to U.S. Bank and Capitol One is not apparent from their own financial documents, the calculation necessary to ascertain this amount is not sufficiently complicated such that a court-ordered accounting is required. Without a doubt, the amount paid by Plaintiffs can be determined using a simply amount of addition. Since Plaintiffs cannot amend this

9
CASE NO. 5:11-cv-05664 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

cause of action to plead a viable claim, it will be dismissed without leave to amend.

## IV.  ORDER

Based on the foregoing, the Motion to Dismiss filed by Capital One and Chevy Chase (Docket Item No. 32) is GRANTED.  The first, second, third and seventh causes of action are DISMISSED WITHOUT LEAVE TO AMEND in their entirety.

The sixth cause of action is DISMISSED WITHOUT LEAVE TO AMEND insofar as it is asserted against Capital One and Chevy Chase.

Since this order effectively resolves all causes of action against Capital One and Chevy Chase, they are DISMISSED as parties to this case.

Only one defendant in default, U.S. Bank, currently remains.  The court therefore schedules a hearing on Plaintiffs' anticipated motion for default judgment against U.S. Bank for **January 11, 2013, at 9:00 a.m.**  Plaintiffs shall file and notice the motion accordingly.

**IT IS SO ORDERED.**

Dated:  October 3, 2012

                                                EDWARD J. DAVILA
                                                United States District Judge

CASE NO. 5:11-cv-05664 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS